ZECHARIAH CHAFEE, in equity, *vs.* THE FOURTH NATIONAL BANK of NEW YORK and another.

Kennebec.    Opinion December 20, 1880.

*Assignment for the benefit of creditors, made in another State, binding upon assenting creditors. Effect upon property in this State. Non-resident creditors. Corporations, residence of. Equity jurisdiction.*

A general assignment for the benefit of creditors made in another State, is valid here so far as to protect the assigned real estate here situated from attachment by a non-resident creditor, who has assented to the assignment, and received in part, the benefits thereby secured to him.

The statutes of this State do not apply to foreign assignments, but leave them to be governed by those principles of comity which have heretofore been recognized as existing in this State, and ought to prevail in all the states.

The recognized rule in this State is to uphold foreign assignments, except as against our own citizens; and this discrimination is not unconstitutional.

It is a general rule that those who assent to an assignment for the benefit of creditors cannot repudiate it. Knowingly receiving payments or dividends thereby secured to them is conclusive evidence of assent.

An exception to the general rule, is where an assignment is declared void by the law of the place where it is made. If declared absolutely void, no ratification or assent of the creditors can make it valid; but if it is only void at the election of such creditors as choose to avoid it, it will be sustained as to such creditors who assent to it or afterwards ratify it.

When a creditor, to whom the law secures the right to avoid an assignment (not void absolutely,) made by his insolvent debtor, assents to the assignment, or knowingly avails himself of the benefits thereby secured to him, he waives his right to treat the assignment as void.

A corporation can have but one legal residence, and that must be within the State or sovereignty creating it, although, by comity, it may be allowed to do business in other jurisdictions through its agents.

A court of equity has jurisdiction to remove a cloud from title to real estate. There is a still stronger reason for taking jurisdiction to prevent a cloud from being placed upon the title. Thus a court of equity will enjoin a non-resident creditor, who has assented to an assignment for the benefit of creditors, made in another State, from levying upon the assigned real estate situated in this State.

BILL IN EQUITY, heard on bill, answer and proofs.

The facts sufficiently appear in the opinion.

*William L. Putman*, for the complainant, in an elaborate argument, cited: *Abbott* v. *Goodwin*, 20 Maine, 409; *Adams* v. *Wheeler*, 10 Pick. 199; *Adlum* v. *Yard*, 1 Rawle, 163; *Alsopp's Case*, 1 De Gex F. & J. 289; American Leading

Cases, 74 (4th ed.) ; Angell and Ames on Corporations, § 191 ; *Atwood* v. *Protection Insurance Co.* 14 Conn. 436 ; Bacon's Abr. Tit. Election, E. ; *Badlam* v. *Tucker*, 1 Pick. 397 ; *Baldwin* v. *Bean*, 59 Maine, 482 ; *Bank* v. *Deming*, 17 Vt. 366 ; *Bank* v. *Eagle Sugar Refinery*, 109 Mass. 38 ; *Bank* v. *Hagar*, 65 Maine, 361 ; *Baxter* v. *Wheeler*, 9 Pick. 21 ; *Bentley* v. *Whittemore*, 19 N. J. Eq. 462 ; *Berry* v. *Cutts*, 42 Maine, 448 ; *Bisbee* v. *Ham*, 47 Maine, 543 ; *Bodley* v. *Goodrich*, 7 How. 276 ; *Brett* v. *Carter*, 2 Lowell, 459 ; *Briggs* v. *French*, 1 Sum. 504 ; *Briggs* v. *Parkman*, 2 Met. 265 ; *Bridget* v. *Hames*, 1 Collyer, 72 ; *Brinley* v. *Spring*, 7 Maine, 241 ; *Brooks* v. *Marbury*, 7 Wheaton, 556 ; Bump on Fraudulent Conveyances, 483 ; Burrill on Assignments, § 337 ; *Canal Bank* v. *Cox*, 6 Maine, 402 ; *Carey* v. *Brown*, 2 Otto, 171 ; *Clay* v. *Smith*, 3 Peters, 411 ; *Clouston* v. *Shearer*, 99 Mass. 211 ; *Choate* v. *Williams*, 7 Exchequer, 205 ; *Commissioners* v. *Thayer*, 4 Otto, 644 ; *Copeland* v. *Weld*, 8 Green. 413 ; *Curtis* v. *Leavitt*, 15 N. Y. 131 ; *Cutter* v. *Copeland*, 18 Maine, 127 ; *Cuyler* v. *McCartney*, 40 N. Y. 237 ; *DeRuyter* v. *St. Peter's Church*, 3 N. Y. 238 ; *Dimmock* v. *Bixby*, 20 Pick. 374 ; *Dockray* v. *Dockray*, 2 R. I. 547 ; *Doe* v. *Scribner*, 41 Maine, 280 ; *Dundas* v. *Bowler*, 3 McLean, 401 ; *Dunham* v. *Waterman*, 17 N. Y. 17 ; *Dunham* v. *Whitehead*, 21 N. Y. 133 ; *Erskine* v. *Decker*, 39 Maine, 468 ; *Felch* v. *Bugbee*, 48 Maine, 18 ; *Fiske* v. *Carr*, 20 Maine, 301 ; *Foster* v. *Saco Manufacturing Co.* 12 Pick. 451 ; *Fox* v. *Adams*, 5 Maine, 253 ; *French* v. *Holmes*, 67 Maine, 186 ; *French* v. *Motley*, 63 Maine, 328 ; *Gerry* v. *Stimson*, 60 Maine, 189 ; *Griffin* v. *Marquardt*, 17 N. Y. 28 ; *Halsey* v. *Whitney*, 4 Mason, 231 ; *Hanford* v. *Paine*, 32 Vt. 453 ; *Hapgood* v. *Fisher*, 34 Maine, 407 ; *Hartshorn* v. *Eames*, 31 Maine, 98 ; *Harrison* v. *Rowan*, 4 Wash. C. C. 202 ; *Hanselt* v. *Vilmar*, 19 Alb. L. J. 296 ; *Hays* v. *Heidelberg*, 9 Barr. 203 ; Hill on Trustees, *543, *544, note ; *Hoffman* v. *Mackall*, 5 Ohio St. 124 ; *Howe* v. *Henriquez*, 13 Wend. 240 ; *Hunt* v. *Columbian Insurance Co.* 55 Maine, 297 ; *Ingraham* v. *Geyer*, 13 Mass. 146 ; *James* v. *Whitbread*, 73 E. C. L. 417 ; *Jaycox* v. *Green*, 8 Nat. Bank. Reg. 252 ; *Johnson* v. *Rogers*, 15 Nat. Bank. Reg. 5 ; *Jones* v. *Huggeford*, 3 Met. 517 ;

*Kendall* v. *New England Carpet Co.*, 13 Conn. 390 ; 4 Kent's Commentaries, *160 ; *Kimberly* v. *Ely*, 6 Pick. 440 ; *Livermore* v. *Jenks*, 21 How. 126 ; *Martin* v. *Graves*, 5 Allen, 602 ; *May* v. *Wannemacher*, 111 Mass. 208 ; *McClelland* v. *Remsen*, 3 Keyes (N. Y.) 455 ; *Mitchell* v. *Winslow*, 2 Story, 644 ; *Nichols* v. *Patten*, 18 Maine, 238 ; *Nightingale* v. *Harris*, 6 R. I. 321 ; *Ockerman* v. *Cross*, 54 N. Y. 29 ; *Osborn* v. *Adams*, 18 Pick. 245 ; *Owen* v. *Body*, 31 E. C. L. 254 ; *Peirsoll* v. *Elliott*, 6 Peters, 95 ; *Pennock* v. *Coe*, 23 How. 117 ; *Pike* v. *Bacon*, 21 Maine, 286 ; *Rapalle* v. *Stewart*, 27 N. Y. 313 ; *Read* v. *Baylies*, 18 Pick. 497 ; *Reed* v. *Woodman*, 4 Maine, 400 ; *Reed* v. *Jewett*, 5 Maine, 96 ; *Richmondville Manufacturing Co.* v. *Pratt*, 9 Conn. 487 ; *Ridgeway* v. *Stewart*, 4 Watts & S. 383 ; *Sanderson* v. *Bradford*, 10 N. H. 260 ; *Schuyler's Case*, 3 Benedict, 202 ; *Shreve* v. *Fenno*, 49 Maine, 78 ; *Simmons* v. *Curtis*, 41 Maine, 379 ; 1 Smith's Leading Cases, *47 ; *South Boston Iron Co.* v. *Boston Locomotive Works*, 51 Maine, 589 ; *Spencer* v. *Jackson*, 2 R. I. 547 ; *Spencer* v. *Slater*, 42 B. D. 13 ; *Stone* v. *Bartlett*, 46 Maine, 442 ; Story's Conflict of Laws, § 424 ; Story's Equity Jurisprudence, § 694–700 ; *Stray's Case*, 2 Chanc. (L. R.) 374 ; *Sumner* v. *Hicks*, 2 Black. 532 ; *Therason* v. *Hickok*, 37 Vt. 459 ; *Todd* v. *Bucknam*, 11 Maine, 41 ; *Treadwell* v. *Salisbury Manufacturing Co.* 7 Gray, 400 ; *Ulmer* v. *Hills*, 8 Maine, 326 ; *Union Pacific R. R. Case*, 10 Nat. Bank. Reg. 181 ; *Varnum* v. *Camp*, 28 N. J. Law, 328 ; *Vose* v. *Holcomb*, 31 Maine, 407 ; Wharton's Conflict of Laws, § 392 ; *Wheeler* v. *Evans*, 26 Maine, 133 ; *Wheelden* v. *Wilson*, 44 Maine, 19 ; *Whitney* v. *Kelley*, 67 Maine, 377 ; *Wiley* v. *Collins*, 2 Fairf. 195 ; *Zipcey* v. *Thompson*, 1 Gray 243.

*Baker & Baker*, also for the complainant.

*James D. Fessenden*, for respondents.

1. Both deeds as to real estate in this State are absolutely void. Both deeds are assignments in trust for the benefit of creditors. Bump on Fraudulent Conveyances, 321–3 ; Burrill on Assignments, c. 1 and c. 8, § § 148–9 ; *Harkrader & Crane* v. *Leiby*, 4 Ohio State, 603 ; *Briggs* v. *Davis*, 21 N. Y. 576 ;

*Dunham* v. *Whitehead*, 21 N. Y. 131 ; *Woodruff* v. *Babb*, 19 Ohio, 216 ; *Mussey* v. *Noyes*, 26 Vt. 472.

The distinction between deeds of this description and deeds of trust in the nature of a mortgage consists mainly in the creation of a trust for the benefit of third parties, and in the power of absolute disposal of the property for the purposes of the trust. These attributes are contained in the deed of November, 1873, as well as in that of April 6, 1874.

This first mentioned deed, it will be observed, is not a deed poll like the deeds in common use throughout New England, but is an indenture in two parts, containing a covenant to stand seized to a use on the part of the grantee, and the power to make an immediate disposition of all the property for the purpose of paying the debts of the grantors. It does not simply create a lien upon the property for the payment of money, but is an absolute conveyance enabling the trustee to close up at once the business of the corporation, and pay its debts from the proceeds. The provisions to this end are clear and unequivocal, and are not defeated by the provision that the property shall revert upon payment of all the assignor's indebtedness.

II. The provision that the assignment shall be void if the debts are paid is not inconsistent with this interpretation of the deed. It is equivalent to saying that the property shall revert if the purposes of the trust are satisfied, instead of leaving a resulting trust in favor of the grantor. *Todd* v. *Bucknam*, 11 Maine, 41 ; *Wilkes* v. *Ferris*, 5 Johnson, 355 ; *Hall* v. *Denison*, 17 Vt. 510 ; *Porter's Case*, 54 Penn. 465 ; *Briggs* v. *Davis*, 21 N. Y. 576 ; *Halsey* v. *Whitney*, 4 Mason, 222.

III. Assignment in trust for creditors cannot transfer real estate in another State. Burrill on Assignments, 406 ; Story on Conflict of Laws, third edition, pp. 517, 525, 527, 529, 532, 539, 549, 568, 610 ; *U. S.* v. *Crosby*, 7 Cranch, 115 ; *McCormick* v. *Sullivant*, 10 Wheaton, 192 ; *Hutcheson* v. *Peshine*, 16 N. J. 167 ; *Osborn* v. *Adams*, 18 Pick. 245 ; *Rogers* v. *Allen*, 3 Hammond, (Ohio,) 488 ; *Lessee of McCullogh* v. *Roderick*, 2 Hammond, 234 ; *D'Ivernois* v. *Leavitt*, 23 Barhour, 63.

IV. The above cases recognize the impracticability of the administration of trusts created in a foreign jurisdiction. To the same effect are the cases of *Watkins* v. *Holman*, 16 Peters, 56, 57; *Spurr* v. *Scoville*, 3 Cush. 578; *Campbell* v. *Wallace*, 10 Gray, 162; and the numerous cases where foreign executors or administrators have sought relief in the courts of other countries. The fundamental objection is the same in both cases. It arises from the impossibility of subjecting the same subject matter to the simultaneous action of different tribunals.

It is conceded that the court where the trust originates and which has jurisdiction of the person of the trustee, will exercise its authority over him, though the instrument creating the trust may purport to convey property beyond its jurisdiction. Perry on Trusts, § § 70, 71, 72; Story's Equity, § 1290 *et seq.*; *D'Ivernois* v. *Leavitt*, above cited.

V. These deeds are invalid because they are repugnant to the statutes of this State relating to assignments. R. S., c. 70; *Whitney* v. *Kelley*, 67 Maine, 377; *Simmons* v. *Curtis*, 41 Maine, 373; *Green* v. *Van Buskirk*, 7 Wall. 151; *Guillaudet* v. *Howell*, 35 N. Y. 657, (cited in American Law Register, New Series, vol. 6, 522); see note. *Loving* v. *Pario*, 10 Iowa, 282; *Philson* v. *Barnes*, 50 Penn. St. 230.

VI. The cases of *Fox* v. *Adams*, 5 Greenl. 245; *Felch* v. *Bugbee*, 48 Maine, 9; *South Boston Iron Co.* v. *Boston Locomotive Works & Tr.* 51 Maine, 585, have settled the law in this State in favor of the lien of the attaching creditor as against the assignee under a foreign assignment, even in regard to personal property. It has been supposed that this was founded upon the supposed preference to be given to claims of our own citizens. This doctrine has been exploded by the case of the *South Boston Iron Co.* v. *Boston Locomotive Works*, above cited.

VII. The bill alleges and at the hearing on the preliminary injunction, much stress was laid upon the allegation, that all Maine creditors had assented to this assignment.

The depositions of Smith & Hallet, show that this is not the fact. There are Maine creditors, whose rights are affected by this assignment, one of which has commenced proceedings which must prevail against the claim of the assignee.

That the eminent counsel with whom Mr. Chafee has advised had no confidence in the validity of this conveyance, is evident from his paying the Milliken levy.

VIII. The doctrine of equitable estoppel does not apply to this case. *Vose* v. *Holcomb*, 31 Maine, 406; *Fiske* v. *Carr*, 20 Maine, 301; *Kimberly* v. *Ely*, 6 Pick. 440; *Insurance Co.* v. *Wallis*, 23 Maryland, 173; *Hayes* v. *Heiberger*, 9 Penn. St. 207; (overruling *Adlam* v. *Yard*, 1 Rawle, 163); *Doe* v. *Scribner*, 41 Maine, 277.

IX. It is evident from the exhibits in the case, that the respondent never intended to agree to this assignment, or to induce others to believe that they did. What they did agree to is explicitly stated, and that agreement has been kept. The attempt to spring a technical estoppel upon them is in direct violation of the spirit of these agreements, and deserves no countenance from a court of equity.

*B. H. Bristow*, for the Fourth National Bank, respondents.

Proceedings under the insolvent laws of one State do not have the effect to transfer property in another State.

Whatever may have been the course of English decisions in this respect at the time of the separation, and whatever doubts may have been expressed by the earlier writers and judges in this country, it is now the settled American doctrine, that the insolvent laws of a State have no force to transfer property beyond its jurisdiction, and within the territory of another State. Kent's Com. 12th ed. vol. II, §§ 405, 406, 407; Story's Conflict of Laws, § 414; Wharton's Conflict of Laws, § 334, *et seq.*; *Upton* v. *Hubbard*, 28 Conn. 274; *May* v. *Breed*, 7 Cush. 15; *Blake* v. *Williams*, 6 Pick. 306; *Abraham* v. *Plestoro*, 3 Wend. 538; *Johnson* v. *Hunt*, 23 Wend. 87; *Hoyt* v. *Thompson*, 19 N. Y. 207; *Willitts* v. *Waite*, 25 N. Y. 587; *Kelly* v. *Crapo*, 45 N. Y. 86; *Milne* v. *Moreton*, 6 Bin. 361; *Harrison* v. *Sterry*, 5 Cranch, 289; *Ogden* v. *Saunders*, 12 Wheaton, 213; *Booth* v. *Clark*, 17 How. 322; *Felch* v. *Bugbee*, 48 Maine, 9; *Dunlap* v. *Rogers*, 47 N. H. 281.

Voluntary assignments by insolvent debtors for the benefit of creditors do not operate to transfer even personal property situate within the jurisdiction of another State.

I. This doctrine seems to be equally well established by the great preponderance of American authorities, and it is held that attaching creditors may prevail against such assignments. Kent's Com. 12th ed. vol. II. § 407, note 1; *Paine* v. *Lester,* 44 Conn. 196; *Osborn* v. *Adams,* 18 Pick. 245; *Ingraham* v. *Geyer,* 13 Mass. 146; *Fox* v. *Adams,* 5 Greenleaf, 245; *South Boston Iron Co.* v. *Boston Locomotive Works,* &c. 51 Maine, 585; *Towne* v. *Smith,* 1 Woodb. & Minot, 137; The Watchman, Ware, 232; *Taylor* v. *Boardman,* 25 Vt. 589; *Ward* v. *Morrison,* 25 Vt. 593; *Oliver* v. *Townes,* 14 Martin (La.), 93; *King* v. *Johnson,* 5 Harrington, 31; *Kidder* v. *Tufts,* 48 N. H. 121, 125; *Guillaudet* v. *Howell et al.* 35 N. Y. 657, (cited and approved by U. S. Supreme Court, in *Green* v. *Van Buskirk,* 7 Wall. 151); *Jonnson* v. *Parker,* 4 Bush. (Ky.) 150; *Hutcheson* v. *Peshine,* 16 N. J. Eq. 167; *Varnum* v. *Camp,* 13 N. J. Law, R. (1 Green,) 326; *Moore* v. *Bonnell,* 31 N. J. Law R. (2 Vroom), 91; *Zipcey* v. *Thompson,* 1 Gray, 243; *Green* v. *Van Buskirk,* 5 Wall. 310; same case, 7 Wall. 139.

II. In some States the opinions of the courts seem to limit this rule to the creditors who are citizens of the State in which the property is situated, and who invoke the remedies of the courts of that State. But such limitation does not seem to be consistent with reason, and has been expressly disclaimed by this court in the case of *South Boston Iron Co.* v. *Boston Locomotive Works, supra.*

III. The property in controversy in this case being real estate, and the assignments under which the complainant claims not having been executed and recorded in conformity to the law of Maine, he holds neither a legal nor equitable title against an attaching creditor.

It is a well settled principle of law that the title and disposition of real estate is exclusively subject to the laws of the country where it is situated, the *lex loci rei sitæ,* which alone can prescribe the mode by which it can pass from one person to another. Hence it has been held that even an equitable title under a grant of lands which lie in a State generally, but which have not been selected or located, does not pass from one person to another

unless the instrument is executed and recorded according to the law of the State in which the land is situated.   *McCormick* v. *Sullivant*, 10 Wheaton, 192 ; *United States* v. *Crosby*, 7 Cranch, 115.

1. The reasons given by the courts against giving effect in one State to transfers and assignments of the property of a debtor domiciled in another whether voluntary or involuntary, apply *a fortiori* when the property is real estate ; for a conveyance or transfer of such property is effective only by virtue of the law of the State in which it is situated.

A general assignment of all property, real and personal, of a debtor, although it conform to the laws of the State of his residence, does not pass title to lands in another State, even as against the assignor, and creates no equity which a court will enforce.   *Rogers* v. *Allen*, 3 Hammond, 488 ; *Lessee of McCullough* v. *Roderick*, 2 Ham. 235 ; *Houston* v. *Nowland*, 7 Gill & Johns. 480 ; *Osborn* v. *Adams*, 18 Pick. 245 ; *Hutcheson* v. *Peshine*, 16 N. J. Eq. 167 ; *Knox* v. *Jones et al.* 47 N. Y. 389 ; *Nicholson* v. *Leavitt*, 4 Sanford, 276.

2. The statute law of Maine (R. S., c. 70,) authorizes and regulates assignments for the benefit of creditors, and declares how they may be made effective.   By this statute the legislature has prescribed the policy of the State in respect to such assignments, and this policy is necessarily exclusive of all others. *Moore* v. *Bonnell*, 31 N. J. Law, R. 96.

This statute in terms declares that no such assignment shall be valid against attaching creditors, unless sworn to and notice given in a particular manner, and a bond filed and approved by the judge of probate within ten days.   The statute makes no exception, but in terms embraces "every assignment "made by any debtor for the benefit of creditors."

3. Neither of the instruments in question in this case is good as a deed.   Chafee is not a creditor, but a mere trustee for creditors generally.   Independent of this trust, both instruments are without consideration, and neither can be upheld as a deed. The only consideration upon which either could be rested is the trust itself, and if that be invalid by the law of Maine, then the consideration fails altogether.

III. The doctrine of equitable estoppel has no application in this case.

The notes of the A. & W. Sprague Manufacturing Company were received by respondent only as collateral security for existing debts, and in consideration thereof indulgence was given for a specified time to the drawers and indorsers.

The agreement under which the mortgage notes were received has been strictly complied with by respondent. The original drafts were not surrendered, nor were any of the rights or remedies of the creditor waived, except as to the time within which there was to be forbearance to sue.

Respondent did nothing to induce the debtor company to make the assignment, and took no part in any meeting of creditors for the purpose of considering an assignment.

There was no deception practiced by the respondent, nor any such gross negligence as to amount to constructive fraud.

Neither complainant nor any creditor of the A. & W. Sprague Manufacturing Company could possibly have been misled or deceived, or induced to part with any right, or to forego the use of any remedy by any act of respondent. In such a case the doctrine of equitable estoppel does not apply. *Brant* v. *Va. Coal & Iron Co.* 93 U. S. (3 Otto), 335, and cases cited in the opinion of Mr. Justice FIELD.

But this precise question has been met and decided by this court in the case of *Vose* v. *Holcomb*, 31 Maine, 407.

*Charles A. Peabody*, *Fisher A. Baker* and *Charles A. Peabody, Jr.*, also furnished a very able brief for the respondents and the Metropolitan National Bank of New York; as did *Austin G. Fox* and *Waldo Hutchins*, for the Manhattan Company, respondents.

WALTON, J. The A. & W. Sprague Manufacturing Company (a corporation created by the laws of Rhode Island), finding itself unable to meet its indebtedness as fast as it matured, on the first day of November, 1873, mortgaged its property, real and personal, to a trustee to secure such of its creditors as should extend the time for the payment of their demands for the term

of three years ; and afterward, on the sixth day of April, 1874, by another instrument, made the conveyance absolute, and gave the trustee authority to sell the property and apply the proceeds to the declared purposes of the trust.   Creditors whose debts amounted to over eight millions of dollars accepted the security thus offered them and agreed to the desired extension.   Among the creditors who agreed to the extension was the Fourth National Bank of the city of New York, the defendant in this suit.   A portion of the property conveyed to the trustee was situated in this State.   The three years having expired, and its debt not having been paid, the bank above mentioned commenced a suit in this State and attached real estate, and propose to levy upon a portion of the real estate, conveyed to the trustee, to satisfy their demand.   This suit is a bill in equity by the trustee asking the court to enjoin the bank from levying upon the real estate conveyed to him, as such a levy would create a cloud upon his title and embarrass him in the discharge of his duties.   He avers in his bill that such of the creditors as accepted the security created by the conveyances to him are estopped to deny the validity of his title.   The bank, in its answer, says that the two instruments mentioned in the plaintiff's bill were general assignments by an insolvent debtor for the benefit of creditors, and being made in the State of Rhode Island, as to real estate in Maine, were inoperative and void ; and that the bank is not estopped from levying upon it.

Assuming that the defendant bank is · right in saying that the two conveyances referred to were in effect general assignments for the benefit of creditors, we have the important question presented whether such an assignment, made in another State, is valid here, so far as to protect the assigned real estate here situated from attachment by a non-resident creditor who has assented to the assignment and received in part the benefits thereby secured to him.

The question has been ably argued, and we have given to it the consideration which its great importance and the magnitude of the interests involved seemed to require, and the conclusion to which we have arrived is that the question must be answered in the affirmative.

The ground is taken in defense that all assignments for the benefit of creditors, whether made within or without the state, which are not conformable to our statute, are repugnant to it, and must therefore be regarded as inoperative and void so far as property within this State is concerned. We think this is untenable ground. Our statute does not apply to foreign assignments,—it applies only to domestic assignments, as its terms clearly imply, —leaving the former to be governed by those principles of comity which have heretofore been recognized as existing in this State, and ought to prevail in all the states of the American Union.

In *Ockerman* v. *Cross*, 54 N. Y., 29, the court held that the statute law of New York regulating assignments for the benefit of creditors did not apply to foreign assignments; that such assignments, if valid by the law of the place where made, although not conformable to the law of New York, would protect the property assigned from attachment.

In *Bentley* v. *Whittemore*, 19 N. J. Eq. 462, the question was very fully considered, and the court held that a voluntary assignment for the benefit of creditors made by a non-resident debtor, which was valid by the law of the place where it was made, could not be impeached in that State, with regard to property there situated, in behalf of a non-resident creditor, although the assignment was not conformable to the statute of assignments in force in that State.

In *Bholen* v. *Cleveland*, 5 Mason, 174, the court held that an assignment for the benefit of creditors, made in Pennsylvania, passed property in Massachusetts, as against a creditor who did not reside in Massachusetts.

And such is the recognized doctrine in this State.

In *Fox* v. *Adams*, 5 Maine, 245, the court held that an assignment made by an insolvent debtor in another jurisdiction would not operate upon property in this State, "*so as to defeat the attachment of a creditor residing here.*" But the court did not decide that such an assignment would not defeat the attachment of a creditor who did not reside here. On the contrary, the doctrine is stated as an exception to the general rule. It is

an exception in favor of domestic creditors only.   The language of the court clearly implies this.   "Comity between states is not thus to be extended, *to the prejudice of our own citizens.*"   Such is the language of the court; and we think it clearly implies that while a foreign assignment will not be permitted to defeat the attachment of a domestic creditor, it will have that effect upon foreign creditors.   The reason of the rule clearly implies this.   It is the supposed duty of every government to protect its own citizens, a duty which it does not owe to foreigners.

In *Todd* v. *Bucknam*, 11 Maine, 41, the court expressly stated that the doctrine which had been previously established in favor of resident creditors, could not be extended to non-residents.   The assignment in that case, (although actually executed within the limits of this State,) was made by a non-resident debtor to a non-resident trustee, and the suit in which property found in this State was attached was commenced in the name of a resident of this State, and the rule in favor of domestic creditors was invoked in support of the attachment; but the jury having found that the real owners of the demand sued were non-residents, the court held that the rule did not apply.   Although the court might, perhaps, have given some other answer to the argument of the plaintiff's counsel, the only one which it in fact gave, was that the *real* creditors claiming under the attachment, were non-residents, and therefore the rule in favor of domestic creditors did not apply.   This point, though actually raised, argued, and decided by the court, does not appear in the head notes of the reporter.

It is claimed, however, that in a more recent case (*South Boston Iron Co.* v. *Boston Locomotive Works*, 51 Maine, 585,) the doctrine in favor of domestic creditors was extended to non-resident creditors.   A careful examination of that case will show that this claim is not well founded.   The court there held that an attachment by a non-resident creditor would not be defeated by an assignment subsequently made in another State; but the court did not hold that an attachment by a non-resident creditor would not be defeated by such an assignment previously made.   On the contrary, it is expressly stated in the opinion of Chief

Justice TENNEY, on page 589, that such would be the effect. He says: "But by the rule of comity referred to, the assignment would be upheld here, and an attachment made *after* the assignment and notice thereof to the creditor, would be invalid."

See also *Felch* v. *Bugbee*, 48 Maine, 9, where the rule, and its limitation to domestic creditors, are accurately stated.

We think it is clear that the recognized rule in this State is to uphold foreign assignments, except as against our own citizens. There is certainly force in the objection that such a discrimination is in conflict with that provision of the federal constitution which declares that the citizens of each State shall be entitled to all privileges and immunities of citizens of the several States. But there are many cases in which such a discrimination has been sustained, and we are aware of none in which this objection has prevailed. Chancellor KENT, although himself opposed to such a discrimination, concedes that it is the prevailing doctrine in this country, and he does not express a doubt of its constitutionality. Nor does Judge STORY in his elaborate examination of this and kindred questions, in his Conflict of Laws. That provision of the federal constitution has heretofore been regarded as applying only to such privileges and immunities as are in their nature fundamental and universal, and not to special privileges enjoyed by the citizens of a State by virtue of its local laws; and it does not apply to corporations at all. *Paul* v. *Virginia*, 8 Wall. 168.

Besides, if the objection were well founded, we think the better remedy would be to abolish the rule in favor of our own citizens, not to extend it to the citizens of other States. But we do not think the discrimination is unconstitutional.

But there is another and an independent ground on which it is claimed that the assignment should be upheld. Creditors, whose debts amount to more than eight millions of dollars, have assented to the assignment and received payments thereby secured to them. Among these creditors are those who have attempted to attach the property assigned. Can these assenting creditors now repudiate the assignment? We think not. It is a general rule that those who assent to an assignment cannot repudiate it.

And knowingly receiving payments or dividends thereby secured to them, is conclusive evidence of assent.   These creditors have done both.   They not only assented to the assignment, but they have since received payment in part of the large interest thereby secured to them.   The Fourth National Bank alone has received over fifty thousand dollars.   We think they are thereby estopped to treat the assignment as invalid.

We say such is the general rule.   An exception to it is where an assignment is declared void by the law of the place where it is made.   If declared absolutely void by the law of the place where made, no assent or ratification of the creditors can make it valid. But if not absolutely void,—if it is only void at the election of such creditors as choose to avoid it,—and they assent to it, or afterwards ratify it by accepting payments or dividends thereby secured to them, then, as to such assenting or ratifying creditors, the assignment will be sustained.   The assignment now under consideration is of the latter class.   It was valid by the law of the place where made.   It is not absolutely void in this State. Non-resident creditors are here bound by it.   Resident creditors may here avoid it if they choose so to do.   But if, instead of electing to avoid it, they actually assent to it, and accept payments thereby secured to them, then the general rule applies, and we think their right to treat the assignment as void is extinguished.

In *Clay* v. *Smith*, 3 Peters, 411, the court held that a creditor, who is a citizen of one State, by voluntarily making himself a party to proceedings under the insolvent laws of another State, thereby becomes bound by the proceedings to the same extent as the citizens of the State where the proceedings are had; and, if the debtor obtains a discharge, that the creditor's debt will be thereby discharged.

In *Bodley* v. *Goodrich*, 7 Howard, 276, the assignment contained conditions which rendered it void upon its face as against a non-assenting creditor, but the court said that if the creditor had assented to the assignment there could have been no objection to it.

In *Adlum* v. *Yard*, 1 Rawle, 163, the court said that the creditor might originally have repudiated the assignment, but

having taken a dividend, under it, he should no longer question its validity.

In *Rapalee* v. *Stewart,* 27 N. Y. 310, the court held that it would be a fraud upon all the other creditors to allow one who had assented to the assignment to repudiate it, and thereby gain a preference and secure his entire debt.

Personal privileges may undoubtedly be waived, although secured by the positive provisions of a statute; and when a creditor, to whom the law secures the right to avoid an assignment made by his insolvent debtor, assents to the assignment, or knowingly avails himself of the benefits thereby secured to him, we think he thereby waives his right to treat the assignment as void. This rule, as already stated, does not apply to assignments which the law declares absolutely void. It applies only to such as are avoidable at the election of creditors. The assignment now under consideration we regard as of the latter class. We hold that all creditors who became parties to it, or knowingly accepted any of its benefits, thereby waived the right to afterward treat it as invalid.

We do not deny that the *lex loci rei sitæ* is to govern in this case. But we hold that the *lex loci rei sitæ* is as here declared. Not that such is the law of this State applicable to domestic assignments, but that such is the law of this State governing foreign assignments when they are brought into litigation here with respect to property here situated. Our statute, as its provisions clearly show, applies only to domestic assignments. No statute can have any extra-territorial force. Our statute cannot govern assignments made in other jurisdictions. The latter, when brought into litigation here, must be governed by the rules of comity already referred to.

It is urged in argument by the defendants' counsel that, for the purpose of applying the Maine assignment act to the Sprague Manufacturing Company, the latter may be regarded as having a residence at Augusta, in this State, where it owned property and where it was doing business. We think this proposition cannot be sustained. A corporation can exist only within the soverignty which created it, although, by comity, it may be allowed to do

business in other jurisdictions, through its agents. It can have but one legal residence, and that must be within the State or sovereignty creating it. *Bank of Augusta* v. *Earle*, 13 Peters, 519 ; *Runyon* v. *Coster*, 14 Peters, 122 ; *Tombigbee Railroad Co.* v. *Kneeland*, 4 Howard, 16 ; *Ex Parte Shellabarger*, 5 Otto, 379.

It is also urged that the assignment was made for the purpose of defrauding creditors. It is a sufficient answer to this argument to say that, in our judgment, the evidence does not support it. The assignment appears to have been made openly, upon consultation with the creditors, and upon their recommendation ; and we think it may well be doubted whether a better arrangement for the creditors could now be made if the work should be gone over with again. If the trustee does not perform his duty faithfully, the remedy is to have him removed and a better man put in his place.

But a single question remains for consideration, and that is the question of jurisdiction. Is it competent for the court to grant the relief prayed for? We think it is. It is a rule of equity jurisprudence, too well settled to require the citation of authorities in support of it, that a court of equity has jurisdiction to remove a cloud from one's title to real estate. We think there is still stronger reason for taking jurisdiction to prevent a cloud being placed upon one's title. As recently said by this court, it is better to prevent the creation of a fictitious title than to compel its cancellation, or release, after it has been created. *Gerry* v. *Stimson*, 60 Maine, 186.

> *Bill sustained. Decree as prayed for.*

APPLETON, C. J., VIRGIN, PETERS and SYMONDS, JJ., concurred.