STOWE et al. v. BELFAST SAV. BANK.

(Circuit Court, D. Maine.   November 23, 1897.)

1. DEED—VALIDITY—EFFECT OF ACKNOWLEDGMENT OF CONSIDERATION.
    An acknowledgment of the receipt of the consideration in a deed under the law of Maine, while it does not estop the grantor from denying the actual payment of the price, will prevent him from defeating the operation of the deed, or showing that it was executed without consideration.

2. ASSIGNMENTS FOR CREDITORS—ASSENT OF CREDITORS—RECORD.
    That the assents of creditors to an assignment by a debtor in Massachusetts were subsequent to the recording of the deed of assignment in Maine, where real estate of the assignor was situated, so that the record did not exhibit such assents, did not affect the validity of the assignment, nor prevent the record from operating as notice to creditors attaching the property after the assents were given.

3. SAME—EFFECT OF STATE INSOLVENCY LAWS.
    The insolvency laws of a state are limited in their operation to the territory of the state, and cannot be invoked in aid of, nor to defeat, an assignment for the benefit of creditors made in another state by an inhabitant of the latter state.

4. SAME—EFFECT OF DEED—PROPERTY IN ANOTHER STATE.
    A voluntary deed of assignment made by a debtor for the benefit of all of his creditors is effective to transfer to the grantee the title to real estate situated in another state when executed and recorded in accordance with the requirements of the law of such state, and where, by such laws, nonresidents are permitted to hold and convey real estate therein.

5. FEDERAL COURTS—FOLLOWING STATE DECISIONS.
    The courts of the United States are not required by Rev. St. § 721, to follow state decisions made on grounds of public policy or comity merely; and a single decision of the supreme court of a state, made in 1828, holding that, as to property situated in that state, a general assignment made by a debtor in another state would not be allowed to defeat an attachment of such property by one of its own citizens, which decision has never been repeated, will not be accepted as binding on a federal court in the state.

This was an action at law by William E. Stowe and others against the Belfast Savings Bank, involving the validity of an attachment, and a sale thereunder of certain land claimed by plaintiffs as trustees under a general assignment for the benefit of creditors, made by the attachment debtor.

Edward Woodman, for plaintiffs.
Symonds, Snow & Cook, for defendant.

WEBB, District Judge.   This is a real action.   The plea is, did not disseise.   The parties submit the case to the court upon the following stipulation and agreed statement:

"As there is no controversy between the parties as to the facts in this case, it is agreed that the case may be submitted to the court upon the subjoined statement of facts, which may be treated by the court as the findings of a jury.   To the rulings of the court upon the facts thus presented, each party reserves the right of exception and appeal by writ of error to the circuit court of appeals.

"Facts: The property in controversy is a tract of real estate, situated in the town of Eden, Hancock county, Maine, and its value is about $7,500. Prior to February 8, 1889, the legal title was vested in one George W. W. Dove, of Andover, Mass.   On February 8, 1889, said Dove, being insolvent,

made a common-law assignment and conveyance of all his property, of every kind, not exempt by law from attachment and seizure on execution, to John C. Ropes, of Boston, Mass., for the equal benefit of all of his creditors, without preferences of any kind, a copy of which assignment is hereto annexed, and made a part of the case. Said assignment and conveyance was duly recorded February 11, 1889, in the registry of deeds for the county of Hancock, in which county the land in controversy is situated. Subsequently, on the 11th day of March, 1889, said Ropes resigned his trust as assignee under said assignment; and the plaintiffs in this action are his duly-appointed successors in his said trust, as assignees of said Dove, and, by appropriate conveyances, have become invested with such title as said Ropes took under said assignment to the real estate in controversy. The total amount realized by the assignees from the sale of Dove's property, and the collection of his assets up to the present time, has been less than twenty-six thousand dollars; and the only property remaining, upon which they have not realized, is the real estate in controversy, and some corporation stocks, which are worthless. After said assignment was recorded as aforesaid, and prior to September 11, 1889, creditors of said Dove to the aggregate amount of $396,961.33 had become parties to said assignment, and assented to its provisions; but there is no record in the registry of deeds for said county of Hancock of such joinder and assent of such creditors, and there is not in said registry any record of said assignment after the same had been joined in and assented to by such creditors; but defendant bank never became a party to said assignment, or assented thereto. On September 11, 1889, the Belfast Savings Bank, the defendant herein, attached the real estate in controversy, as the property of said Dove, in suit brought by said bank against said Dove, in the supreme judicial court of the state of Maine. In this suit said bank recovered judgment against said Dove for the sum of $17,190 debt and $33.94 costs of suit, on the 8th day of May, 1891, upon which judgment execution was issued; and on the 5th of June, 1891, the real estate in controversy was duly seised upon said execution, and subsequently advertised and sold at public auction, by the officer holding said execution, to the Belfast Savings Bank, for the sum of $7,500, said bank being the highest bidder therefor; and said officer subsequently executed and delivered to said bank a proper deed conveying to said bank all the right, title, and interest which said Dove had in and to the premises in controversy on the 11th day of September, 1889, when the same were originally attended as above set forth. All the proceedings attending said seizure and sale were regular and in accordance with the provisions of the statutes of the state of Maine, and the officer's deed was effective to convey to the defendant all the right, title, and interest of said Dove in the real estate in controversy which it held by its attachment of September 11, 1889.

"Under the foregoing stipulation and agreed statement, it is the intention of the parties to submit to the court the single question whether or not the common-law assignment for the benefit of creditors, executed by Dove on the 8th of February, 1889, duly recorded as aforesaid, and subsequently assented to by creditors whose aggregate demands exceeded the total value of the property assigned, as above set forth, is valid as against the subsequent attachment of the defendant, on the 11th of September, 1889. If the court shall rule, as matter of law, upon the foregoing facts, that the assignment from Dove to Ropes, takes precedence over the subsequent attachment by the defendant bank, judgment is to be entered for the plaintiffs; but, if otherwise, then judgment is to be entered for the defendant."

The agreed statement relieves the court of any inquiry as to the facts of this case, and the distinct statement of the question of law involved might excuse a simple answer of that question; but it will be more satisfactory and better to state the reasons for the conclusion reached.

The assignment is a common-law assignment, which recognizes the statute of insolvency of Massachusetts in force at its date. It has been argued that the assignment was under and dependent upon that

statute. This position cannot be approved. It is true that, for some of its conditions and provisions, reference is made to that statute, but only to save the labor and trouble of enumerating specially such conditions and provisions. The assignment is made specially subject to abrogation by the institution of proceedings in the insolvency court within six months. It is under seal, and properly acknowledged and recorded. Such an assignment is valid under the laws of Massachusetts and of Maine, as well as at common law. National Mechanics' & Traders' Bank v. Eagle Sugar Refinery, 109 Mass. 38; Todd v. Bucknam, 11 Me. 41; Frank v. Bobbitt, 155 Mass. 112, 29 N. E. 209; Train v. Kendall, 137 Mass. 366; Mayer v. Hellman, 91 U. S. 496, 500; Reed v. McIntyre, 98 U. S. 507, 511; Pickstock v. Lyster, 3 Maule & S. 371.

In Train v. Kendall, the plaintiff, a citizen of Massachusetts, attached by trustee process a debt due from a citizen of the same state to Kendall Bros., the principal defendants, citizens of New York. Kendall Bros., before the attachment, had made a general assignment of all their real and personal property to one Hall, in trust to pay, first, certain preferred creditors, and then their other debts ratably. The assignee appeared as claimant. The superior court dismissed the claim, and charged the trustee. On exceptions by the assignee (claimant), the supreme court sustained the exceptions. The following extract from the opinion of the court in that case, delivered by Judge Field (now the chief justice), is peculiarly appropriate here:

"If Kendall Bros. [the assignors] were domiciled in Massachusetts, this assignment, having been assented to by creditors who held claims in amount exceeding the value of the property assigned, would be good against an attaching creditor; and there is nothing in the policy of our laws that invalidates the assignment because Kendall Bros. are domiciled in New York. If the assignment is also valid by the laws of that state, Kendall Bros. cannot, under our statutes, be adjudged insolvent debtors; and it therefore becomes impossible to invalidate the assignment by proceedings instituted by an assignee in insolvency; but, in the absence of any statute making this assignment void or voidable by Massachusetts creditors, the common law prevails in actions at law, for it is the common law which the plaintiff invokes, and not any process, if there be any, for the equitable distribution of the assets of Kendall Bros. found in Massachusetts. In so deciding, we do not give effect to a foreign law prejudicial to our own citizens; we give effect to an assignment which is good against the plaintiff in this action by our own law." Cemetery v. Davis, 76 Me. 289, 292; Chaffee v. Bank, 71 Me. 514, 523, 524.

Objection has been made that the instrument of assignment was not duly recorded. The cases cited in support of this objection were cases of recording deeds, which had not been acknowledged pursuant to statutory requirement, and are not pertinent to this case. This assignment was sealed and acknowledged, and was lawfully recorded. But it is further said it was without consideration. Passing for the present the question of fact, it is to be said that the right to be recorded is not dependent on the consideration of a deed.

Rev. St. Me. c. 73, § 17, provides that "deeds shall be acknowledged before * * * any justice of the peace, magistrate or notary public within any of the United States." Subsequent sections of the same chapter provide for the death or departure of a grantor without ac-

knowledging his deed, and for cases where he refuses to acknowledge, and direct the manner of supplying the defect, so that the instrument may be recorded. Then follows section 23:

"A certificate of acknowledgment or proof of execution, as aforesaid, must be indorsed on or annexed to the deed, and then the deed and certificate may be recorded in the registry of deeds. No deed can be recorded without such certificate."

The case shows that all these requirements were strictly complied with respecting this assignment. It is further urged that the record of this assignment was not notice to the savings bank. A sufficient answer to this is supplied by the Revised Statutes of this state (chapter 73, § 12):

"The title of a purchaser for a valuable consideration, or a title derived from levy of an execution, cannot be defeated by a trust, however declared or implied by law, unless the purchaser or creditor had notice thereof. When the instrument creating or declaring it is recorded in the registry where the land lies, that is to be regarded as such notice."

Dove's assignment was recorded in the registry of deeds in Hancock county (the registry where the land lay), February 11, 1869, at 30 minutes past 1 o'clock p. m. The attachment was not made until the 11th day of the following September.

Coming to the question of consideration: The assignment says:

"The said party of the first part, in consideration of one dollar and other good and valuable consideration to him paid by the said party of the second part, the receipt whereof is hereby acknowledged."

It has been repeatedly held by the highest court of Maine that such acknowledgment will not estop the grantor from denying the actual payment of the price, but will prevent him from defeating the operation of the deed, or showing that it was executed without consideration. Goodspeed v. Fuller, 46 Me. 141; Bassett v. Bassett, 55 Me. 127; Morrill v. Robinson, 71 Me. 24; Beach v. Packard, 10 Vt. 100. Indeed, a consideration is not necessary, in this state, to the validity of a deed between the parties. Green v. Thomas, 11 Me. 318, 321; Laberee v. Carleton, 53 Me. 211. It is claimed, however, that the assignment is void and without consideration for lack of the assent of the creditors of Dove, or, at least, of his creditors, the aggregate of whose demands against him equaled the value of the property assigned. Admitting the principle of law to be so, the agreed statement shows that the total value of the property assigned was less than $50,000, and that creditors whose claims amounted to $396,- 961.33 had become parties to the assignment, and assented to its provisions before the bank attached the land in controversy.

The defendant cites and relies on numerous cases in Maine and Massachusetts where attachments were made before any creditors had assented to the assignment, or where, at the date of the attachments, the demands of the assenting creditors were less in amount than the value of the property assigned, in which cases the attachments have been held good, at least upon the excess of the property above the demands of assenting creditors. Those decisions are of no assistance in this case, whose conditions are so different. Halsey v. Fairbanks, 4 Mason, 206, 213, 214, Fed. Cas. No. 5,964; Brooks v.

Marbury, 11 Wheat. 78. Felch v. Bugbee, 48 Me. 9, only decided that the insolvency law of Massachusetts had no extraterritorial force, and that a discharge under it is no bar to an action by a citizen of Maine. Pearson v. Crosby, 23 Me. 261, declares the assignment void for noncompliance with the terms of the Maine statute of 1836. South Boston Iron Co. v. Boston Locomotive Works, 51 Me. 585, was a question of the application of the insolvency law of Massachusetts to a debtor in Maine, summoned as trustee by a Massachusetts creditor of the insolvent. Moreover, the attachment was prior to the assignment. The trustee was charged. Chaffee v. Bank, 71 Me. 514, sustains the title of the assignee in a voluntary assignment made in another state against a foreign creditor attaching in Maine.

The argument that because an assignment made in the state of Maine, by a resident, might have been defeated by proceedings under the insolvent law of the state, seasonably instituted, fails for two reasons: First. It overlooks the fact that the statute cannot be invoked by or against one not an inhabitant of the state of Maine, and only by or against such an inhabitant owing debts contracted while such an inhabitant. Dove was not an inhabitant of Maine at the date of his assignment, nor at any time between then and the date of this defendant's attachment; nor does it appear that he was an inhabitant when he contracted any debt, nor, indeed, that he was ever an inhabitant of this state. Second. The insolvency statute declared void only such assignments, pledges, transfers, and conveyances, by an insolvent or one in contemplation of insolvency, as were made within four months (the time is now six months) of the filing of a petition by or against the debtor. In the present case the assignment was executed February 8, 1889, recorded February 11, 1889, and the attachment by the bank was made September 11th following,—a period of seven months after the assignment. It may be added that the argument, if followed, would lead to an extension of extraterritorial effect of the statute of Maine. The strict limitation of the validity of state insolvency laws to the territory of the state always gives to nonresidents some advantages not enjoyed by residents. They are not bound by the discharge of the insolvent, and may maintain actions on their demands notwithstanding such discharge, if they have taken no part in the proceedings in insolvency. Barnett v. Kinney, 147 U. S. 476, 13 Sup. Ct. 403. The constitutional question suggested in argument calls for no discussion, and adds nothing to the position of the plaintiff. He does not claim anything on constitutional grounds.

The principle that the law rei sitæ must govern and control the transfer of title to real estate, and that the rule of property in real estate prevailing where it is situated must be applied by the courts of the United States, is recognized in its fullest extent. But it is believed that there is no incident or detail required by the laws of Maine lacking in this case for a legal conveyance of the land in controversy. The conveyance was by deed, duly executed under seal, acknowledged and recorded in the registry of the county where the land was situated. The title to the property was in the grantor. His right to convey the same is not disputed, and no omission of any formality of a valid conveyance under the laws of Maine is pointed out

or suggested. That the grantor and grantee were citizens and residents of Massachusetts did not affect the right to hold and convey real estate. Such rights are extended by statute even to aliens.

That no rule of property established in Maine is violated by this assignment is manifested by the fact that the court upholds such conveyances per se. The conveyance is good between the parties to it, which it could not be if in contravention of any rule of the state regulating the conveyance or transfer of title of real estate.

In Chaffee v. Bank, 71 Me. 514, an assignment of real estate situated in Maine, between parties resident in Rhode Island, is held valid. It is no answer to say such an assignment is in that case declared valid against a nonresident attaching creditor. If it violated any rule of conveyance or transfer of title established in the state, or lacked any essential of a legal conveyance, it could not be good against anybody. The provision of state law is as follows:

"A person owning real estate and having a right of entry into it, whether seized of it or not, may convey it or all his interest in it by a deed to be acknowledged and recorded, as hereinafter provided." Rev. St. Me. c. 73, § 1.

The requirements of acknowledgment and record referred to were fully complied with.

The validity and effect of assignments executed in another jurisdiction have been considered in a great number of cases, and by many courts. Examination will show that the decisions have largely involved the subject of the extraterritorial force of local statutes of insolvency and bankruptcy, under and in compliance with which the assignments were made; and the principle is fully and everywhere settled that such statutes, ex proprio vigore, have no validity or binding force beyond the jurisdiction of the state which enacted them, although as a matter of comity they may be applied elsewhere, when not conflicting with positive statute or prejudicially affecting the interest of citizens. Similarly, the powers and functions of executors and administrators are restricted to the limits of the jurisdiction of the state in which they are appointed, and that it is only by comity that they are permitted to do any administrative act within the territory of another state, the rule being that the estate of one dying testate or intestate must be administered conformably to the laws prevailing where it is situated and found. Failure to note the distinction between cases like that now before this court and those involving the extraneous validity and effect of local statutes, or the powers of foreign executors and administrators, has led to confusion, and caused difficulty in cases like this. "In most [states] the distinction between involuntary transfers of property, such as work by operation of law, as foreign bankrupt and insolvency laws, and a voluntary conveyance, is recognized. The reason for the distinction is that a voluntary transfer, if valid where made, ought generally to be valid everywhere, being the exercise of the personal right of the owner to dispose of his own, while an assignment by operation of law has no legal operation outside the state in which the law was passed." Chief Justice Fuller, in Cole v. Cunningham, 133 U. S. 107, 129, 10 Sup. Ct. 269.

Comity concedes and allows, but does not withhold or prohibit. It yields as favor what cannot be claimed as a right. When it is the basis of judicial determination, the court extending the comity out of favor and good will extends to foreign laws an effect which they would not otherwise have. It is not an exercise of comity to administer the local law, though it agrees with the foreign law. Then, as Judge Field says, in the passage already quoted from Train v. Kendall, in so deciding the court does not give effect to a foreign law; it gives effect to its own law. "If the objection to so doing was founded upon an assumed violation of the comity existing between the several states of the United States, that did not reach the jurisdiction of the court, a rule of comity being a self-imposed restraint upon an authority actually possessed." Chief Justice Fuller in Cole v. Cunningham, 133 U. S. 107, 113, 10 Sup. Ct. 271.

In Fox v. Adams, 5 Me. 245, the facts were like those in this case, the only difference being that there the attachment was of personal property, a chose in action, by trustee process, while here we have an attachment of real estate. It was in that case held that, on principles of comity, the court was not required to give effect to the assignment to the prejudice of an attachment by a citizen of the state. It is not plain how the principle of comity was involved. The assignment was not by virtue of any local statute or peculiar law. It was the personal act of the debtor, disposing of his property, and that "every person having property in a foreign country may dispose of it in this."

Hunter v. Potts, 4 Term R. 182, 192, is a principle repeatedly affirmed. The real question was the validity of the assignment in this state. The opinion of the court shows the ground of the decision; and we think, when it is carefully examined, it is apparent that it is based and rests on the law relating to the powers of foreign administrators, and foreign bankruptcy and insolvency laws. The authorities cited by the court in support of the opinion are Dawes v. Head, 3 Pick. 128; Le Chevalier v. Lynch, 1 Doug. 170; Harrison v. Sterry, 5 Cranch, 289; and Ingraham v. Geyer, 13 Mass. 146. How completely the court was affected by the doctrines applicable to foreign insolvent and bankrupt laws, and to foreign executors and administrators, is evident by this portion of the opinion:

"In foreign administrations, to which proceedings here are made ancillary, funds thus collected within this jurisdiction are held subject to the claims of our own citizens, to whom payment is to be made in full or in part, according to circumstances. Dawes v. Head, 3 Pick. 128, and the cases there cited. In the case of Le Chevalier v. Lynch, 1 Doug. 170, the assignees of a bankrupt were not permitted to defeat a process of foreign attachment made after the bankruptcy, although the policy of the bankrupt system is much favored in England, and the attachment was made in a colonial jurisdiction. The bankrupt law of a foreign country does not legally operate to transfer property in the United States. Harrison v. Sterry, 5 Cranch, 289. Nor can property in this state be put out of the reach of creditors here by the insolvent laws of another state. Comity between states is not thus to be extended, to the prejudice of our own citizens. The case of Ingraham v. Geyer, 13 Mass. 146, cannot be distinguished in principle from the one before us. There, an assignment made in Pennsylvania, resembling the one in question, except that four months instead of seventy days were allowed to creditors to accede to

its provisions on their part, was not permitted to defeat a foreign attachment made in Massachusetts, by a creditor resident there, although the trustee had notice of the assignment, and set it forth in his disclosure. Trustee charged."

We have here quoted the whole of the opinion of the court relating to the present matter, so that there may be no suggestion that is not fully and correctly represented. An examination of the cases invoked in support of this opinion will make evident the infirmity of the decision.

Dawes v. Head (decided in 1825) 3 Pick. 128, was an action in the name of the judge of probate in Massachusetts, for the benefit of sundry persons, one of whom was a citizen of New Hampshire, and one a British subject, resident in London, on the bond of Head as administrator with the will annexed of one Thomas Stewart, a native subject of Great Britain, domiciled in Calcutta, Bengal, who died in 1816, testate. His last will was duly proved by one of the executors named in it, in the supreme court of judicature in Bengal, and his estate and effects were in regular course of administration at Calcutta before the allowance and registry of the will in the probate court in Massachusetts. Stewart died insolvent, and his estate and effects in the hands of his executor in Calcutta were insufficient to pay the demands duly registered there against the estate, among which were those of the parties for whose benefit the action was commenced in the name of Dawes, J. The issue was whether there had been a breach of the condition of the bond, and was decided in favor of the defendant. This case therefore seems to afford no support to Fox v. Adams, but the court says, in the course of its opinion (page 146):

"We cannot think, however, that in any civilized country, advantage ought to be taken of the accidental circumstance of property being found within its territory, which may be reduced to possession by the aid of its courts and laws, to sequester the whole for the use of its own subjects or citizens, where it shall be known that all the estate and effects of the deceased are insufficient to pay his just debts. Such a doctrine would be derogatory to the character of any government. * * * There cannot be, then, a right in any one or more of our citizens, who may happen to be creditors, to seize the whole of the effects which may be found here, or claim an appropriation of them to the payment of their debts, in exclusion of foreign creditors. It is said this is no more than what may be done by virtue of our attachment law, in regard to the property of a living debtor who is insolvent. But the justness of that law is very questionable, and its application ought not to be extended to cases, by analogy, which do not come within its express provisions."

Le Chevalier v. Lynch (1779) 1 Doug. 170, is not more in point, as it arose under a bankruptcy law. There the creditor and bankrupt were both residents of England. The creditor sent to the Island of St. Christopher, a British colony, and, before the colonial court, attached a debt due from Lynch to the bankrupt. The report of the case in 1 Doug. does not indicate whether the assignee in bankruptcy made any claim to the fund in the court of St. Christopher. Lynch afterwards came to England, and was there sued by the assignees, and it was held that they could not "in such case" recover the debt. Subsequent to this decision it was held, in Sill v. Worswick (decided in 1791) 1 H. Bl. 665, that in such case the assignees might, in an

92 F.—7

action for money had and received, recover from the creditor the amount he had so collected. So, also, in Hunter v. Potts (1791) 4 Term R. 182, .and in Phillips v. Hunter (1795) 2 H. Bl. 402. In all these cases the attachment was of personal property.

The only point in Harrison v. Sterry, 5 Cranch, 289, pertinent to the present inquiry, is the declaration that "the bankrupt law of a foreign country is incapable of operating a legal transfer of property in the United States." It must be admitted that these cases, cited by the court in Fox v. Adams, fall far short of sustaining its conclusion. But the court further says: "The case of Ingraham v. Geyer, 13 Mass. 146, cannot be distinguished in principle from the one before us." It is on that case, probably, that it mainly based its decision. Recurring, then, to Ingraham v. Geyer, it is found that it rests on the authority of Le Chevalier v. Lynch, and of Dawes v. Boylston, 9 Mass. 337. Of Le Chevalier v. Lynch it is not necessary to add anything to what has been already said. Dawes v. Boylston does not touch this question. That was an action of debt on a pro-bate bond. The facts were: Thomas Boylston, a British subject, resident in England, in 1793 became bankrupt, according to the laws of Great Britain, and a commission was duly issued. He died in 1798, testaté, and his will was duly approved. The executors named by him in his will having refused to accept the trust, Ward N. Boylston was appointed administrator with the will annexed by the competent court in England. Ward N. Boylston, the defendant, was also appointed administrator in Massachusetts. The English assignees in bankruptcy, after the defendant's appointment as administrator by the English court, assigned to him, by indenture, a claim due to the estate from a party in Massachusetts, on which he recovered judgment for upward of $100,000, on which he sued out execution as administrator, procured the judgment to be satisfied, and, as administrator, received the money recovered. This money, Ward N. Boylston, the defendant, contended, was no part of the estate of which he was administrator, but was recovered to his own use and in his own right. The court of Massachusetts held that the money belonged to the estate, and must be accounted for to the creditors of the deceased, or to those entitled under his last will. This bare statement of the case shows that it has no tendency to uphold the decision of Ingraham v. Geyer, in which it is cited. Nor is this all that must be said about Ingraham v. Geyer.

In Blake v. Williams, 6 Pick. 286, 307, Parker, C. J., who gave the opinion also in Ingraham v. Geyer, speaking for the court, says, in reference to that case:

"This case has been sometimes cited in this court and elsewhere as having decided that in all circumstances an attaching creditor here would prevail over the assignee of the debtor under a transfer made abroad; but we do not think it was intended or that it does in its terms go to that extent. The assignment set up was clearly void according to the law of this state."

In Hanford v. Paine, 32 Vt. 442, 457, which upholds the title of an assignee as a matter of comity, the supreme court of Vermont says:

"The principle of the leading case in Massachusetts (Ingraham v. Geyer, 13 Mass. 146) where the rule of discrimination in favor of their own citizens,

as to voluntary assignments of insolvents made abroad, is first attempted to be maintained, is virtually condemned by the same court in the case of Means v. Hapgood, 19 Pick. 107, when it came under consideration as the decision of a neighboring state. Shaw, C. J., there says that 'the case of Fox v. Adams, 5 Greenl. 245, has been repeatedly doubted in this state; and this last case was decided expressly upon the authority of Ingraham v. Geyer, and is in principle the same.' What is left of Ingraham v. Geyer as a foundation for Fox v. Adams? The reasoning failing, the conclusion of that case cannot stand."

There remains for examination the question how far this court is controlled by the decision of the state court in Fox v. Adams, under section 721 of the Revised Statutes of the United States. That section is as follows:

"The laws of the several states, except where the constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply."

This section has been frequently discussed by the supreme court. It is settled that it includes state decisions construing local statutes and established usages and customs; and that when by a course of decisions, establishing rules of property, they have become laws of the state, such local law or custom so established by repeated decisions of the highest court of the state becomes the law of the state within this section. "It has never been supposed by us that this section did apply, or was intended to apply, to questions of a more general nature, not at all dependent upon local statutes or local usages of a fixed and permanent operation." Swift v. Tyson, 16 Pet. 1, 18. The supreme court, in Bucher v. Railroad Co., 125 U. S. 555, 584, 8 Sup. Ct. 974, thus states the rule: "Where such local law or custom has been established by repeated decisions of the highest courts of a state, it becomes the law governing the courts of the United States sitting in that state."

Now, Fox v. Adams does not deal with any local statute. It does not pretend to declare any established usage or custom. It does not express any rule of property, and is not fortified by any previous decisions of the state court. It does not even refer to any previous existing local usage or statute of the state of Massachusetts, of which state Maine had until within a few years been a part, and to whose statutes and usages it had been subject, and, if any statute or use to support the decision had there existed, a reference thereto would naturally have been made. That no such usage or law could be derived from its history as a district of Massachusetts is manifest from Means v. Hapgood (1837) 19 Pick. 105, in which the court of Massachusetts denied the existence of such a law, policy, or usage in that state, and, being called upon to mete out to citizens of Maine the same treatment which has been extended to citizens of Massachusetts by the court of this state in Fox v. Adams, in a similar case, refused to retaliate. The language of the opinion by Chief Justice Shaw on this point is as follows:

"And we think it would be carrying this principle too far to take a single case, decided several years ago, a case the authority of which, in point of law, has been repeatedly doubted in this state, and consider it as conclusive evi-

dence of the existing law of that state, and thus make it the basis of a decision which would not be adopted if the same act had been done in another state."

Moreover, Fox v. Adams is distinctly put upon the principle of comity, and is the first expression in the court of this state of any application of that principle in a like case; and, as before said, comity is a spirit of accommodation and good will, allowing to others what they cannot demand as a right. When courts invoke the doctrine and rule of comity, and refuse to do anything, they simply say, "More is asked of us than any spirit of friendship justifies us in acceding to." The courts of the United States are not required, under section 721 of the Revised Statutes, to follow state decisions made on grounds of public policy or comity merely. Boyce v. Tabb, 18 Wall. 546, 548. In that case it was contended that the court was obliged by this statute to follow the ruling, on grounds of public policy, of the highest court of Louisiana, and it was said in the opinion: "This is an erroneous view of the obligation imposed by that section on this court, as our opinions abundantly show."

Finally, Fox v. Adams was decided in 1828, and, in the 69 years since, the question it involved has not directly and distinctly come before the highest court in Maine, nor has that decision been repeated or affirmed, though in a few instances that case has been referred to by the courts. The obligation to follow state courts is limited to the point in issue, and incidental expressions of opinion not necessary to the decision of the question are not binding. "The courts of the United States are not bound by any part of an opinion not needful to the ascertainment of the right or title in question between the parties." Carroll v. Carroll's Lessee, 16 How. 275, 287.

Upon this examination, it is the opinion of the court, as matter of law, that, upon the agreed statement of facts, the assignment takes precedence over the attachment of the defendant, and decides that the defendant did disseise the plaintiffs, and that judgment must be entered in favor of the plaintiffs. Until December 15th is allowed for preparation and presentation of exceptions before judgment shall be actually entered.