HUGH BARCLAY'S COMMITTEE, ET AL. *v.* HUGH BARCLAY, ET AL.

[Abstract Kentucky Law Reporter, Vol. 7—516, 523.]

**Estoppel of Creditor as Against Other Creditors.**

Where a creditor residing in this state institutes his action to settle an insolvent estate of a lunatic in the hands of a committee, and after the institution of such suit and while it is pending attaches and sells the lunatic's real estate in the state of Illinois, securing a large sum of money, he may be required in this state to account for the same for distribution to all the creditors of such insolvent estate, and he is estopped by his suit here to claim all the money so received by his attachment.

APPEAL FROM LOGAN CIRCUIT COURT.

January 28, 1886.

OPINION BY JUDGE HOLT:

At the February term, 1881, of the Logan Circuit Court, the appellee, Hugh Barclay, Jr., was found to be a lunatic, and the custody of his estate was by a proper order committed to the appellant, C. H. Ryan, as his committee, who, finding that it was insolvent, brought this action on June 14, 1881, for its settlement. The petition alleged that Barclay in addition to a considerable estate, both real and personal, in this state was then the owner of some land in Missouri and some real estate in the city of Chicago and state of Illinois, and that by the law of the latter state its courts were authorized to decree its sale to pay the debts of the lunatic upon the petition of the committee appointed in Kentucky, if he were first authorized to ask it by a proper court of this state. The appellant, the Logan County National Bank, was as a creditor made a defendant, and on June 23, 1881, it filed its answer, set-

ting up a large indebtedness by Barclay to it, and made it a cross-petition against him.

By a proper proceeding he was found on January 24, 1883, to be no longer a lunatic, and his committee was discharged and ordered to settle his accounts. Between the time of his appointment and discharge he had taken charge of the Kentucky assets, and they had been converted into money; but no steps had been taken by him as to the Missouri and Illinois property for want of time, as he reported. The assets and indebtedness of the lunatic, including the estimated value of the Missouri and Illinois property, were reported to the court by its commissioner before he was found to be restored to his proper mind, and it was thus shown that the estate was insolvent. On August 26, 1882, the appellant, the Logan County National Bank, by a proceeding in the superior court of Cook county, Illinois, sued out an attachment against the Chicago property for its debt, which it had already set up in this suit, and it was levied upon that day. This was before Barclay had been adjudged as restored to his proper mind. A judgment was rendered for its sale on June 12, 1883, and it was so sold on July 23, 1883, the bank realizing therefrom after the payment of all expenses the sum of $8,449.75. The bank also attached the Missouri property for the same debt, but the exact time when it did so does not appear. The commissioner in this case reported that these attachments had been sued out, and the appellee, Barclay, excepted to his report and that of his committee, because they had not reported the value of the Missouri and Illinois property as a part of his estate, and because his committee had not been charged with it.

It is urged that as no objection came from any creditor, the exception of Barclay should not have been heeded; that as his estate was insolvent it made no difference to him whether his assets went in payment of one debt or another. Waiving the question whether he did not have the right to do so for himself, and in his name for his creditors, yet the court had obtained jurisdiction of the settlement of the estate as an insolvent one and as that of a lunatic, and having done so it was bound sua sponte to see that it was properly distributed.

Upon the filing of the exception the court ordered the appellant, the Logan County National Bank, to report under oath the amount

it had realized from the Illinois and Missouri property, and it did so under protest, the parties agreeing that the land in the last named state, and which had been attached by the bank but had not been sold, should, without waiving any right of the bank or admitting the power of the court to compel it to account for it, be estimated at $800, and the bank be charged with it as if it had in fact already received it. The court, by the judgment now complained of, compelled the bank to account for this sum and the net amount it had realized from the sale of the Chicago property, and distributed it with the balance of the estate pro rata among the other creditors, the bank being one of them, and the power of the court to compel it to so account is the principal question upon this appeal.

The estate being insolvent, and a suit having been brought to settle it, it may be regarded, so far. as this question is concerned, as upon the footing of one assigned for the benefit of creditors generally. It has been held that such an assignment in one state passed property in another as against a creditor who did not reside in the state where the property was situated. Comity will not be extended by the tribunals of a state so far as to prejudice its own citizens, and it has therefore been held by the courts of various states that, while a foreign assignment will not defeat a domestic attaching creditor, it will so operate as to a foreign one. *Whipple v. Thayer,* 16 Pick. (Mass.) 25. In the case of *Chaffee v. Fourth Nat. Bank,* 71 Maine 514, 36 Am. Rep. 345, this rule was applied even to real estate, and it was held that a general assignment for the benefit of creditors made in another state was valid in Maine so far as to protect the assigned real estate situated there from a nonresident creditor, who had assented to the assignment and received in part the benefits secured to him by it.

Here the appellant bank is a corporation of this state; it asserted its claim in the lower court, thereby recognizing and assenting to the jurisdiction, and was in fact claiming a benefit from the estate through the medium of this suit. Its effort in this direction has never been abandoned, nor the assertion of its claim waived. The committee of the lunatic was one of its directors and its vice-president; and after filing its answer in this suit, seeking the benefit of the assignment, and knowing of the helpless condition of the debtor by reason of his lunacy, it attached his real estate, situ-

ated out of the state; and having obtained and brought the proceeds arising from its sale within the jurisdiction of the lower court, to which the bank was already subject, it claims the right to hold what it has thus obtained. Thus it is at once claiming a benefit through this action from the insolvent estate, and yet defeating its object. It has not only assented to what was equivalent, so far as it was concerned, to a general assignment for the benefit of creditors, but sought the benefit arising from it; and every equitable consideration dictates that it should account for what it received as a part of the insolvent estate.

The action of the court in sustaining the exception to the additional allowance of $200 by the commissioner to the committee for his attorney's fee was warranted by the state of the record, and the judgment is *affirmed*.

*Browder & Edwards, for appellants.*